IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ANGEL WILLIAMS**<br>**4 Pickett Lane**<br>**Stafford, VA 22556**<br><br>**Plaintiff,**<br><br>v.<br><br>**JOHN PHELAN, SECRETARY, U.S. DEPARTMENT OF NAVY**<br><br>Serve:<br>John Phelan, Secretary, U.S. Dept. of Navy, 720 Kennon St, SE<br>Bldg. 36, Room 233<br>Washington, D.C. 20374<br><br>Serve: Pamela Bondi, U.S. Attorney General<br>950 Pennsylvania Avenue, N.W.<br>Washington, D.C.  20530<br><br>Serve: Jeanine Ferris Pirro, United States Attorney for the District of Columbia, 555 4th Street, N.W. Washington, D.C. 20530<br><br>**Defendant.** | Case No.: |

**CIVIL COMPLAINT FOR EMPLOYMENT DISCRIMINATION**

COMES NOW Plaintiff, Angel Williams ("Plaintiff," "Complainant," or "Ms. Williams"), by counsel, and hereby files this Civil Complaint against John Phelan, Secretary, U.S. Department of Navy ("Defendant" or "Agency"), and states:

1

## INTRODUCTION

1. This is a civil rights complaint brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, *et seq*. ("Title VII"), for unlawful discrimination and employment practices levied against Plaintiff because of her race and retaliation for engaging in equal employment opportunity (EEO) protected activity.

## JURISDICTION AND VENUE

2. This court has jurisdiction of Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and 1343.

3. Venue is proper under 28 U.S.C. §1391(e) because the Agency is an official resident of the District of Columbia, and all of the unlawful transactions, occurrences, and offenses related to this matter were committed in the District of Columbia.

## PARTIES

4. Plaintiff is an adult resident of Stafford, Virginia. At all times relevant to this action, she was employed as a Program Analyst (NH-0343-03) with the Department of Navy, Navy International Programs Office (NIPO) FMS Field Office, Washington, DC and maintained exemplary performance ratings.

5. John Phelan is the Secretary of the Department of Navy and this suit is brought against him in his official capacity.

6. From November 6, 2022 through December 2024, Karla Horn served as the Executive Director, Senior Executive Series (SES), Level II, RMO/Plaintiff's second-level

supervisor. As Executive Director, Ms. Horn was responsible for oversight and recommendations for all Remote Agreements.

7. From March 28, 2021 through January 2, 2025, John Bennett served as Deputy Director of Corporate Operations, NH-0343-04, RMO/Plaintiff's first-level supervisor.

8. From November 5, 2023 through May 8, 2025, Julie Darden served as Director of Corporate Operations, NH-0343-04, RMO/Plaintiff's first-level supervisor.

## PROCEDURAL BACKGROUND

9. On September 29, 2023, Plaintiff made initial contact with the Agency's Equal Employment Opportunity Office (EEO Office). She complained of racial discrimination and disparate treatment related to her pay/compensation.

10. On September 29, 2023, Plaintiff filed her Informal Complaint, *Secretariat EEO Initial Contact Form coupled with attachment*.

11. Upon completion of the informal complaint process, on December 13, 2023, Plaintiff timely filed her Formal EEO Complaint. In her Complaint, she complained that the Agency subjected her to disparate treatment based upon her race (Black) when her white counterpart received an increase in pay, in the amount that her pay was reduced as a result of her change in locality pursuant to the Locality Adjustment required by a Remote Work Agreement. Plaintiff, and other Black employees, similarly had a reduction in pay when they elected to work remotely; however, the Black employees were not afforded the same treatment (i.e., increase in base salary) as the aforementioned white employee.

12. On January 8, 2024, the EEO Office issued a letter identifying the issue accepted for investigation.

13. On January 24, 2024, Plaintiff advised the EEO Office that the accepted issue (Claim No 1) failed to correctly identify the issue and requested amendment. At that time, the EEO Office denied Plaintiff's request to modify Claim No. 1.

14. On March 26, 2024, Plaintiff requested that her Formal Complaint be amended to include a like or related claim of retaliation regarding her first-line supervisor, Julie Darden.

15. On March 28, 2024, the EEO Office accepted Claim No. 2 as follows:

    *Was Complainant subjected to per se reprisal (for filing the instant complaint based on disparate compensation) by the Agency when on 26 February 2024, Complainant's supervisor, Director, Corporate Operations, informed her upon expiration of Complainant's current remote work agreement on 12 March 2025, she would not approve her Remote Work Agreement for 2025?*

16. On July 22, 2024, Plaintiff again requested amendment of Claim No. 1 and the inclusion of Claim No. 3.

17. On July 29, 2024, the EEO Office issued a Decision on Amendment Request and identified Claim No. 1 as:

    *Whether Complainant was subjected to discrimination by the Agency due to disparate treatment on the basis of race (African American) when beginning in March 2023 and culminating in August 2023, the Agency embarked upon an illegal scheme to increase Complainant's white coworker's base salary to off-set a reduction in pay required by her change of geographic location while Complainant and other African American employees did not receive the same salary increase.*

18. In addition, Claim No. 3 was accepted as follows:

    *Whether Complainant was subjected to retaliation when on July 18, 2024, Director, Corporate Operations, Complainant's Supervisor, failed to invite her to a professional development opportunity. Complainant further alleges all of her coworkers within IPO 410 were invited to participate in the professional development opportunity, except for those who had engaged in protected activity (i.e., filed EEO Complaints).*

19. The Accepted Issues identified in Claim Nos. 1 (as amended), 2 and 3 were investigated and a Report of Investigation was issued.

20. On December 17, 2024, Plaintiff timely noted her election to proceed with a hearing before the Equal Employment Opportunity Commission (Case No. 570-2025-00302X).

21. More than 180 days have elapsed since Plaintiff filed her administrative Formal Complaint.

22. Commensurate with the filing of this Civil Action, Plaintiff filed with the EEOC a Notice of Filing of Civil Action in the U.S. District Court. The Notice advises the EEOC of the filing of the instant Complaint and requests withdrawal of her case before EEOC.

23. Plaintiff has exhausted her administrative remedies before the Equal Employment Opportunity Commission.

24. Accordingly, Plaintiff's Formal Complaint (as amended), coupled with all allegations and background facts related thereto, is ripe for adjudication in this federal court in accordance with, *inter alia,* 29 C.F.R. 1614.407.

## FACTS COMMON TO ALL COUNTS

25. On March 28, 2021, Ms. Williams (Black Female) was hired as a Program Analyst, NIPO FMS Field Office, Washington, DC.

26. Her base pay was set at $69,502 with a Locality Adjustment of $21,184 for a total Adjusted Base Pay of $ 90,686.

27. In or about February 2023, Ms. Williams requested to work remotely from Lexington, KY. Her request was granted as reflected by her Remote Work Agreement dated February 17, 2023, authorizing telework from March 12, 2022 through March 12, 2024.

28. Pursuant to the Remote Work Agreement, Ms. Williams' official duty location was changed to Lexington, KY and her locality pay changed from Washington, DC to Lexington, KY resulting in a $12,254 reduction to her Locality Pay.

29. In August 2022, Amanda Lochridge (White Female) was hired as a Program Analyst, NIPO FMS Field Office, Washington, DC.

30. Prior to her hire, Ms. Lochridge was a contractor with Zenetex, LLC earning a total salary of $116,142.  Consistent with NIPO's standard practice to salary match, Ms. Lochridge's salary was set to match her current salary of $116,142 (including locality).

31. On August 9, 2022, Ms. Lockridge received a job offer with a salary of $116,151 per annum inclusive of locality pay (Washington, DC) and cost of living allowance.  She accepted that offer without any request for increase or modification.

32. Ms. Lockridge's acceptance of the job offer required that she relocate from Georgia to Washington, DC.  Ms. Lockridge never relocated to Washington, DC; however, she improperly received locality pay as if she resided in the Washington, DC locality.

33. In January 2023, Ms. Lochridge's pay was increased to $121,787 after the AcqDemo payout and Cost of Living Adjustment (COLA).

34. In or about February 2023, Ms. Lochridge requested to work remotely from Athens, GA. Her request was granted and she executed a Remote Work Agreement.

35. Pursuant to Ms. Lochridge's Remote Work Agreement, her duty location was changed to Georgia and her locality pay changed from Washington, DC to Georgia.  Effective February 21, 2023, Ms. Lockridge's locality pay was adjusted from $29,865 to $21,160 to

reflect her actual geographic location. This resulted in a change in her total salary from $121,787 to $113,082.

36. Subsequent to the Ms. Lochridge's reduction in locality pay, Karla Horn (White Female), Executive Director, RMO Sam Samimi (White Male) and others at Ms. Horn's direction, including but not limited to RMO John Bennett (Black Male), engaged in a scheme to improperly increase Ms. Lochridge's compensation, in the amount that it was reduced as a result of her change in locality (i.e., approximately $8,000). Ms. Horn took unprecedented, illegal actions contrary to Agency policy and procedures to benefit Ms. Lochridge (White) to the determinant of Ms. Williams (Black) and other African American employees who similarly received locality pay reductions.

37. To explain her actions, Ms. Horn argues that Ms. Lochridge's original pay setting was performed in error. However, there is no evidence – other than Ms. Horn's self-serving statement – to support such feigned error.

38. Ms. Horn purports that Ms. Lochridge's employment situation differs from Plaintiff (and her African American counterpart, LaToya Nix). To the contrary, Plaintiff, Ms. Nix and Ms. Lochridge are similarly situated as they are all: (a) Program Analysts; (b) assigned to NIPO FMS Field Office, Washington, DC; (c) with the same payplan (NH) series (0343) and grade (3); (d) performing work pursuant to FMS billets; (e) with Remote Work Agreements and (f) under the second-line supervision of Ms. Horn, Executive Director responsible for oversight of Remote Work Agreements.

39. On March 9, 2023, Ms. Horn directed a Special Act Award for Ms. Lochridge in the amount of $3,500 and submitted the same for vote with each directorate having one vote.

    The proposed award was part of a plan to provide Ms. Lochridge with two (2) $3,500 awards during the year to make up the difference in her loss in pay due to her locality pay adjustment. Despite Ms. Horn's efforts, the proposed award was ultimately not approved.

40. On May 9, 2023, Plaintiff - in her official role - issued a Memorandum for the Record (MFR) concerning an audit of Amanda Lochridge's pay setting. The MFR found no error with Ms. Lochridge's original pay setting and did not recommend moving forward with the resetting of Ms. Lochridge's pay.

41. John Bennett, Plaintiffs' then first-level supervisor, reviewed the MFR and confirmed that Ms. Lochridge's pay was set correctly at the time of hire. Mr. Bennett further acknowledged that if the Agency was going to benefit Ms. Lochridge by increasing her salary, the Agency should similarly treat Black employees in the same manner.

42. Effective May 21, 2023, at Ms. Horn's direction and in furtherance of the illegal scheme, Ms. Lochridge – who had at that time had not completed even one year of service – was granted a Special Act Award in the amount of $1,000 (an amount which far exceeds customary awards granted to employees of Ms. Lochridge's payplan, series and grade).

43. On June 27, 2023, Ms. Horn, in concert with Mr. Bennett and others then took unprecedented action and personally changed the recommendation of the May 9, 2023 MFR. With Ms. Horn's modification, the MFR concluded that Ms. Lochridge's pay setting was originally completed incorrectly and recommended that her pay be reset.

44. At Ms. Horn's direction, Mr. Bennett and others took steps to increase Ms. Lochridge's base pay. Effective August 13, 2023, Ms. Lochridge's pay was adjusted to increase her

base pay from $91,922 to $99,276, an amount nearly equivalent to the loss sustained by her change in locality pay.

45. Ms. Williams and other Black employees have not been afforded the same treatment. Ms. Lochridge has received special privilege as a result of her race to the detriment of Ms. Williams and other similarly situated Black employees. Ray Bruckner, Team Lead, noted that if Ms. Lochridge was Black she would not have received such preferential treatment.

46. On or about January 25, 2024, Ms. Darden became aware of the pending EEOC Complaint and was assigned as Ms. Williams' direct supervisor.

47. On February 20, 2024, Ms. Darden sent Ms. Williams the fully executed Remote Agreement authorizing her continued remote assignment through March 12, 2025.

48. On February 26, 2024, Ms. Darden telephoned Ms. Williams and told her that she would not approve her Remote Work Agreement for 2025.

49. Ms. Darden shared that she would not approve the Remote Work Agreement extension because there was a need for Ms. Williams' role to return to the office and to support her Team Lead.

50. The reasons that Ms. Darden provided for her anticipated refusal to extend Ms. Williams' Remote Work Agreement are pretextual for the following reasons: (a) Ms. Williams work performance is outstanding as reflected by her FY23 Rating of +2; (b) the Agency is currently hiring two Human Capital Managers specifically to work in the Washington DC office, thus there is no staffing need which requires Ms. Williams to return; and (c) Ms.

Williams' Team Lead confirmed that he is fully satisfied with Ms. Williams' work performance and does not need her to return in person to the office.

51. Ms. Darden's refusal to extend Ms. Williams' Remote Work Agreement is retaliation for Ms. Williams' prior protected activity (i.e., the filing of the instant Complaint based on disparate compensation and engagement in other EEO protected activity thereafter).

52. Plaintiff's peers who are similarly situated have not been told that their Remote Work Agreements will be terminated.

53. In or about March/April 2024, RMO Julie Darden complained to Angel Williams that she had been tasked by Ms. Horn to collect information relevant to the investigation of Plaintiff and Ms. Nix's EEO Complaints. She expressed frustration that such tasks were consuming a significant portion of her time.

54. On July 18, 2024, RMO Julie Darden retaliated against Plaintiff by failing to invite her to a professional development opportunity. All of Plaintiff's coworkers within IPO410 were invited to participate in the professional development opportunity, except for those who had engaged in protected activity. Indeed, both Plaintiff and Ms. Nix (who also had filed an EEO complaint) were not included on the invitation for the training.

55. Upon information and belief, other employees and officials who are known and unknown at this time colluded with the RMOs to violate Plaintiff's Civil Rights and have colluded to intentionally discriminate or retaliate against Plaintiff.

**COUNT I (RACIAL DISCRIMINATION)**

56. Plaintiff incorporates every allegation set forth in paragraph nos. 1-55.

57. Plaintiff was discriminated against because of her race (Black).

58. Defendant, through its duly authorized agents, supervisors, managers, executives, employees, and other persons known and unknown, acted intentionally, willfully, or in reckless disregard for Plaintiff's Civil Rights under Title VII by subjecting her to unlawful racial discrimination.

59. Plaintiff's peers, who were similarly situated, were treated differently from Plaintiff in that they were not discriminated against by Defendant or its agents, supervisors, managers, executives, employees, and other persons known and unknown.

60. The discriminatory actions and omissions committed by Defendant, through its duly authorized agents, supervisors, managers, executives, employees, and other persons known and unknown, were materially adverse and changed the terms, conditions, privileges, or immunities of his employment.

61. The stated reasons for misconduct of Defendant, by and through its duly authorized agents, supervisors, managers, executives, and employees, were not the true reasons for the actions or omissions at issue, but were instead a mere pretext to hide the Defendant's discriminatory animus.

## COUNT II (RETALIATION)

62. Plaintiff incorporates every allegation set forth in paragraph nos. 1-61.

63. Plaintiff engaged in protected activity when she filed her Formal Complaint, and she engaged in other EEO protected activity or opposed unlawful harassment or discrimination in various and sundry ways thereafter and as stated herein.

64. As retaliation for Plaintiff filing her Formal Complaint or engaging in EEO protected activity or opposing unlawful discrimination and harassment, Defendant, through its duly

authorized agents, supervisors, managers, executives, employees, and other persons known and unknown, subjected Plaintiff to various acts of retaliation as alleged herein.

65. There is a causal connection between Plaintiff's protected activity and the material adverse actions taken against Plaintiff by Defendant, through its duly authorized agents, supervisors, managers, executives, and employees, and other persons known and unknown.  Indeed, the myriad acts of retaliation were perpetrated against Plaintiff on the heels of Plaintiff's participation in EEO activity, as alleged herein.

66. The material adverse actions taken against Plaintiff by Defendant's agents, supervisors, managers, and executives (and the cumulative effect of such actions within context) were knowingly executed by Defendant and would dissuade a reasonable employee from making complaints of discrimination or participating in EEO protected activity.

67. Defendant, through its duly authorized agents, supervisors, managers, executives, employees and other persons known and unknown, purposefully retaliated against Plaintiff for engaging in EEO protected activity in violation of § 704(a) of Title VII, 42 U.S.C. § 2000e-3(a).

**DAMAGES**

Because of statutorily impermissible or willful, if not malicious, acts of the Defendant and its duly authorized agents, supervisors, managers, executives and employees, Plaintiff has suffered loss of income, loss of benefits, loss of career opportunity, loss of career investment, and loss of advancement pursuant to Title VII of the Civil Rights Act of 1964 and 1991, as amended and codified at 42 U.S.C. §2000e, *et seq*. ("Title VII").  As a consequence of the unlawful and outrageous actions of Defendant through its duly authorized agents, supervisors, managers,

12

executives and employees, Plaintiff has suffered humiliation, loss of standing in the community, emotional pain and suffering, inconvenience, loss of enjoyment of life, irritation and mental anguish. Plaintiff seeks recovery, compensatory, and equitable (i.e., back pay and front pay) damages, as well as attorney's fees, and costs and pre and post judgment interest in the maximum amounts allowed by law pursuant to Title VII of the Civil Rights Act of 1964 and 1991, as amended and codified at 42 U.S.C. §2000e, *et seq*.

## PRAYER FOR RELIEF

Based upon all the allegations stated herein, Plaintiff, Angel Williams, prays for: (a) back pay and front pay for the loss of income and benefits as a result of the discrimination, racial harassment and retaliation stated herein orchestrated by Defendant through its duly authorized agents, supervisors, managers, executives and employees; (b) compensatory damages in the maximum amount permitted under law, Three Hundred Thousand Dollars ($300,000.00); (c) an award of her attorney's fees, costs and expenses associated with this matter, plus interest; and (d) such other and further relief as this Court deems meet.

## A JURY TRIAL IS HEREBY DEMANDED

                                                      **ANGEL WILLIAMS**
                                                      By Counsel

**BAKER SIMMONS**
**Attorneys at Law**
**800 Connecticut Avenue, N.W., Suite 300**
**Washington, D.C. 20006**
**Telephone: 202.775.0050  Facsimile: 202.204.5784**
**Email: richardcbaker@aol.com; baker@bakersimmonslaw.com**

By: */S/RICHARD CARNELL BAKER*
Richard Carnell Baker, D.C. Bar 451190 and VA Bar No.: 28854
Amana Thompson Simmons, Maryland Bar and VA Bar No.:41901
Counsel for Angel Williams

**Dated: October 1, 2025**

13

14