**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ANGEL WILLIAMS**,<br><br>Plaintiff,<br><br>v.<br><br>**HUNG CAO**,<br>*Acting Secretary of the U.S. Department of Navy*<br><br>Defendant. | Case No. 1:25-cv-3532 (TNM) |

**MEMORANDUM ORDER**

Angel Williams, a program analyst at the Department of the Navy, sues the Acting Secretary of the Navy for race discrimination and retaliation in violation of federal law. She alleges that the Department paid a white employee better than black employees like her, and that once she complained about the disparity, the Department treated Williams even worse. The Secretary moves to dismiss Williams's Complaint. Because Williams has surmounted the low bar before her at the pleading stage, the Court denies the motion.

**I.**

In March 2021, Williams, a black woman, began working for the Department of the Navy's Foreign Military Sales Field Office in Washington, D.C. Am. Compl. ¶ 25, ECF No. 12. Her base pay of $69,502, combined with a locality adjustment of $21,184, meant her total salary summed up at $90,686. *Id.* ¶ 26.

About a year into her tenure, the same office hired a white woman, Amanda Lochridge. *Id.* ¶ 29. Consistent with the Navy International Programs Office's "standard practice" to match

new employees' salaries with their prior job's salary, Lochridge's pay was set at $116,142. *Id.* ¶ 30.

In early 2023, both women requested to work remotely, and both requests were approved. *Id.* ¶¶ 27, 34. Williams worked from Lexington, Kentucky, *id.* ¶ 27, and Lochridge from Athens, Georgia, *id.* ¶ 34. Initially, the women's switches prompted locality adjustments that reduced both their salaries. *Id.* ¶¶ 28, 35. Soon after Lochridge's change, however, Karla Horn, who served as an Executive Director, and others working at Horn's direction, tried to increase Lochridge's salary to make up for the loss in pay from her locality adjustment. *Id.* ¶¶ 6, 36. She did so first by directing a $3,500 award called the "Special Act Award" to Lochridge. *Id.* ¶ 39. After other officials rejected the award as too high, *id.* ¶ 40, and after Williams audited Lochridge's pay settings and found no error with her original pay, *id.* ¶ 41, Horn persisted.

Horn granted Lochridge a $1,000 award even though an award that large was typically given only to employees with supervisory authority, which Lochridge did not have. *Id.* ¶ 43. A month later, Horn and another supervisor—John Bennett—concluded that Lochridge's original pay setting was erroneously low, so they officially increased her base pay to make up the difference. *Id.* ¶¶ 44, 47. Williams alleges that neither she nor other black employees received similar treatment. *Id.* ¶ 62.

Come the new year, another incident ensued. Julie Darden, Williams's first-line supervisor, learned that Williams had a pending complaint with the Equal Employment Office ("EEO"). *Id.* ¶ 49. Darden then approved Williams's remote-work agreement through early March 2025. *Id.* ¶ 50. A few days later, however, Darden told Williams that she would not further extend remote work because the field office needed her in person. *Id.* ¶¶ 51–52.

That same spring, too, Darden complained to Williams that investigating Williams's EEO complaint took up a "significant portion of her time." *Id.* ¶ 56. A few months later, Darden invited "[a]ll of" Williams's coworkers "to participate in [a] professional development opportunity" except for Williams and another employee who, like Williams, had filed an EEO complaint. *Id.* ¶ 57.

These events prompted Williams to this Court. She sues the Acting Secretary of the Navy for race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e *et seq.* The Acting Secretary moves to dismiss her Complaint. Def.'s Mot., ECF No. 13. Williams responded, Pl's. Opp'n, ECF No. 15, and the motion is now ripe.

**II.**

To survive a motion under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). To meet this standard, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The Court must "treat the complaint's factual allegations as true and must grant the plaintiff[] the benefit of all inferences that can be derived from the facts alleged." *L. Xia v. Tillerson*, 865 F.3d 643, 649 (D.C. Cir. 2017) (cleaned up). But the Court need not credit legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678. And while a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (cleaned up). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## III.

*Discrimination.* Take Williams's discrimination claim first. As a threshold matter, the parties dispute whether Williams satisfied Title VII's administrative exhaustion requirements before filing her lawsuit. *See* 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.105(a)(1). More specifically, did Williams initiate contact with the EEO before her regulatory deadline passed?

Title VII "imposes rigorous exhaustion requirements and time limitations to preserve for the employing agency a crucial administrative role in addressing alleged violations." *Webster v. Del Toro*, 49 F.4th 562, 566 (D.C. Cir. 2022) (cleaned up). Under 29 C.F.R. § 1614.105(a)(1), a federal employee must initiate contact with an EEO counselor "within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." Failure to comply requires dismissal of the claim. *See Weber v. Battista*, 494 F.3d 179, 183 (D.C. Cir. 2007). That said, the same provision tolls the 45-day deadline where the aggrieved person "did not know and reasonably should not have . . . known that the discriminatory matter or personnel action occurred." 29 C.F.R. § 1614.105(a)(2).

For now, Williams has pled enough to surmount these hurdles. Recall that Lochridge experienced a pay drop after requesting to work remotely. Am. Compl. ¶¶ 34–35. And recall that soon after, agency officials worked to make up her loss in pay. *Id.* ¶ 36. Those officials finally did so on August 28, 2023. *Id.* ¶ 47. But that August 28 decision, lists August 13, 2023, as the "effective" date of their official decision. *Id.* Forty-five days after "the effective date of the action" is September 27, 2023. 29 C.F.R. § 1614.105(a)(1). Because Williams contacted the EEO two days after that point, the delay would normally preclude her lawsuit. *See Weber*, 494 F.3d at 183.

But tolling rules save Williams's claim, at least for now. That is because, construing the Complaint's factual allegations "in the light most favorable" to Williams, as the Court must, *see Gross v. Wright*, 185 F. Supp. 3d 39, 47 (D.D.C. 2016) (cleaned up), she plausibly could not have known about the salary change before the August 28 official decision date. As Williams tells it, the salary-change "scheme" took form in May 2023, when Horn directed various monetary awards to Lochridge. Am. Compl. ¶ 43. Things continued to develop when Horn and Bennett, "in concert" with various officials, "personally altered" Williams's old recommendation for Lochridge's salary. *Id.* ¶ 44. Horn and the same group then "took steps to increase" Lochridge's pay and finally did so on August 28, 2023. *Id.* ¶ 47. The lead up to the August 28 decision stemmed from "Horn's direction," *id.* ¶ 43, and nowhere in the description of Horn's alleged plot was Williams clued in. "[G]iving [Williams] the benefit of all reasonable inferences" from that sequence, *see Maljack Prods., Inc. v. Motion Picture Ass'n of Am., Inc.*, 52 F.3d 373, 375 (D.C. Cir. 1995), it appears that the officials worked behind her back to effectuate the salary-change "scheme."

Using the decision date—August 28, 2023—as the trigger for the 45-day EEO clock, Williams timely contacted the EEO and satisfied her exhaustion obligations for now. Am. Compl. ¶¶ 9–10 (noting EEO contact date of September 29, 2023). To be sure, the Acting Secretary may continue to develop exhaustion arguments down the road. At a later stage, the evidence may show that Williams knew about the alleged scheme before the official decision point and thus failed to timely exhaust her claims. At this early juncture, however, Williams has done enough.

Turning to the merits of her discrimination claim, Williams needs to allege that: (1) she suffered an adverse employment action; and (2) the action was taken because of her protected

status. *Brady v. Off. of Sergeant at Arms*, 520 F.3d 490, 493–94 (D.C. Cir. 2008). She can raise such an "inference of discrimination by showing that she was treated differently from similarly situated employees who are not part of the protected class." *See Brown v. Sessoms*, 774 F.3d 1016, 1022–23 (D.C. Cir. 2014) (cleaned up).

Williams has met this standard. She theorizes that the Department paid Lochridge more than it paid Williams because of her race. Losing out on more favorable pay qualifies as an adverse action. *See Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008) (listing "reductions in salary" as among the "typical" adverse employment actions). And pointing to Lochridge as a similarly situated employee who received better pay suffices to raise an inference of discrimination. *See Brown*, 774 F.3d at 1022–23.

Lochridge and Williams were both: (1) program analysts; (2) assigned to the same grade; (3) working under Horn; (4) from the D.C. office but through remote-work agreements; and (5) both experienced locality-pay reductions after requesting to work remotely. Am. Compl. ¶¶ 28, 35, 38. Unlike Williams, however, Lochridge eventually received a substantial pay increase to make up for the initial locality-pay drop. *Id.* ¶ 47. Indeed, she received that increase even though a prior "audit" found no error with the initial, lower pay setting. *Id.* ¶ 41. Because Lochridge is not black, *id.* ¶ 36, the Court can infer that Williams was treated differently because she is black. *See Joyner v. Morrison & Foerster LLP*, 140 F.4th 523, 530–31 (D.C. Cir. 2025). In fact, at the pleading stage, the Court *must* make that inference in favor of Williams. *See Stokes v. Cross*, 327 F.3d 1210, 1215 (D.C. Cir. 2003). Williams has thus satisfied her burden for now.

The Department counters that nothing more than standard salary-matching practice explains the difference between Williams's and Lochridge's pay, and it faults Williams for not

alleging otherwise. Def.'s Mot. at 16–17. (Recall that the Department's "standard practice" is to match new employees' salaries with their prior job's salary. *See* Am. Compl. ¶ 30.) This argument may bear out at summary judgment, but it is premature. At the pleading stage, Williams need not "allege facts sufficient to negate the [Department's] alternative explanations for its actions—whatever they may turn out to be." *Rochon v. Gonzales*, 438 F.3d 1211, 1220 (D.C. Cir. 2006); *Townsend v. United States*, 236 F. Supp. 3d 280, 298 (D.D.C. 2017) ("At the motion to dismiss stage . . . an employment discrimination plaintiff need not anticipate legitimate, non-discriminatory reasons that may be proffered by the employer for the adverse employment action nor allege pretext to survive a motion to dismiss.").

In any case, Williams has alleged such facts. *See Wright v. Eugene & Agnes E. Meyer Found.*, 68 F.4th 612, 622 (D.C. Cir. 2023) ("[W]hile such [a]llegations regarding comparators, racial comments, [or] pretext obviously strengthen [a] discrimination complaint, they are not even required at the pleading stage." (cleaned up)). She points to various statements and actions suggesting that the Department's standard-practice rationale is pretextual. *See* Am. Compl. ¶ 37 ("[T]here is no evidence—other than Ms. Horn's self-serving statement—to support such feigned error" with Lochridge's lower salary amount); *id.* ¶¶ 42, 44 (explaining that Bennett, who later played a role in adjusting Lochridge's salary, had previously "acknowledged that if the Agency was going to benefit Ms. Lochridge by increasing her salary, the Agency should treat all similarly situated Black employees in the same manner, including [Williams]"); *id.* ¶ 45 (describing Horn's changing attitude toward Lochridge's salary). These pleadings distinguish her case from those the Department cites, where a plaintiff herself injects an obvious alternative explanation for the adverse action into the case and alleges nothing to undermine it. *Cf. Joyner*, 140 F.4th at 534 (dismissing complaint where plaintiff's "own pleadings" included an "email

suggesting the [plaintiff's] request was denied because he had directed it to" the wrong channel and "then offer[ing] nothing to rebut" it). All this to say, Williams's discrimination claim meets the low bar before her.

*Retaliation.* To plead unlawful retaliation, Williams must allege: (1) protected activity, (2) a materially adverse action, and (3) causation. *Steele v. Schafer*, 535 F.3d 689, 695–96 (D.C. Cir. 2008). The retaliation standard reaches any action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (cleaned up). Defendants do not dispute that Williams engaged in protected activity by filing a complaint with the EEO. Def.'s Mot. at 20. At issue is thus only whether Williams adequately alleged that her protected activity prompted a materially adverse action.

Williams has pleaded enough for her claim to proceed. She alleges two materially adverse actions that may not survive summary judgment but that surpass the pleading stage's low bar. First, Williams points to Darden's admonition that she would not extend Williams's remote work again. Am. Compl. ¶ 51. Recall that Darden approved Williams's request to work remotely through March 2025. *Id.* ¶ 50. A few days later, however, she told Williams that she would not approve another remote-work renewal. *Id.* ¶¶ 51–52. Williams does not allege (contrary to the Secretary's view) that Darden's decision could change down the road. *See id.* ¶¶ 50–54. And having to move across states to return to in-person work in Washington after years of working remotely in Kentucky may well dissuade an employee from engaging in protected activity. *See Heavans v. Dodaro*, 648 F. Supp. 3d 1, 14 (D.D.C. 2022) ("Most notably, the revocation of his flexible work schedule and eventual reassignment to a different department in a non-managerial position are inarguably major changes to the conditions of his

employment."); *cf. Walker v. McCarthy*, 170 F. Supp. 3d 94, 112 (D.D.C. 2016) (rejecting the mere denial of remote work as a materially adverse action for a retaliation claim where the employee had never before worked remotely).

Second, and even if the first adverse action did not suffice, Williams alleges that Darden excluded her from a professional development opportunity that *all* coworkers within her group were invited to attend. Am. Compl. ¶ 57. She offers little additional information. Depending on the details that discovery brings to light, this adverse action theory also may not fare well at summary judgment. *See Burlington*, 548 U.S. at 68 (rejecting "slights," "minor annoyances" and "snubbing by supervisors" as bases for retaliation claims (cleaned up)). But once more, the pleading stage's low bar and favorable burden saves Williams's theory. Losing out work opportunities open to everybody else may well dissuade a reasonable employee from filing an EEO complaint. *See Pressley v. Mgmt. Support Tech., Inc.*, No. 22-2262, 2023 WL 5206107, at *6 (D.D.C. Aug. 14, 2023) ("At this early motion to dismiss stage, the Court finds that [the plaintiff] has sufficiently alleged that the denial of the opportunity to attend a training constitutes an adverse employment action."). So this theory suffices for now. *See Allen v. Napolitano*, 774 F. Supp. 2d 186, 200 (D.D.C. 2011) (denying a motion to dismiss on a retaliation claim where the plaintiff cited exclusion from meetings even though the "plaintiff should have articulated the tangible harm or injury she suffered with greater specificity").

Williams also alleges causation. As for the remote-work non-renewal decision, the Department concedes that "temporal proximity between Ms. Darden becoming aware of Plaintiff's EEO protected activity and Ms. Darden's indication that she would not further extend Plaintiff's RWA" satisfies the causation requirement. Def.'s Mot. at 25 n.9. Regarding Williams's exclusion from a work opportunity, a few allegations establish a causal link. Darden

learned about Williams's EEO activity in January 2024. Am. Compl. ¶ 49. In March or April, she verbally "complained" to Williams about having to investigate Williams's EEO complaints. *Id.* ¶ 56. Then three months later, Darden invited all of Williams's coworkers to a "professional development opportunity," while leaving out Williams and her only other colleague who had also filed an EEO complaint. *Id.* ¶ 57. This combination—an express gripe about Williams's protected activity, Williams's exclusion a few months later, *and* a second EEO complainant who experienced similarly exclusive treatment—satisfies the causation requirement for now. *See Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 69 (D.C. Cir. 2015) (listing multiple allegations that collectively show causation); *Buggs v. Powell*, 293 F. Supp. 2d 135, 149 (D.D.C. 2003) ("[T]he proffered evidence as a whole, when viewed in the light most favorable to the plaintiff, creates an inference of retaliatory discrimination . . . ."). And, contrary to the Department's view, this combination relies on more than "mere temporal proximity." *See Sharma v. District of Columbia*, 791 F. Supp. 2d 207, 219 (D.D.C. 2011). Williams has thus met the low burden now before her.

**IV.**

In short, Williams's claims survive for now. Later litigation stages, where the evidence has come in and where Williams has a higher burden of proof, may result in a different outcome.

For all these reasons, and upon consideration of the pleadings, the parties' briefing, and the relevant authorities, it is hereby

**ORDERED** that Defendant's [13] Motion to Dismiss is DENIED.

2026.09.29 14:47:20 -04'00'

Dated: September 29, 2026

TREVOR N. McFADDEN, U.S.D.J.